# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GRAND CANYON TRUST, INC., and SIERRA CLUB, INC. and NATIONAL PARKS AND CONSERVATION ASSOCIATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHERN CALIFORNIA EDISON CO., SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, NEVADA POWER COMPANY and LOS ANGELES DEPARTMENT OF WATER AND POWER, <br><br> Defendants. | CASE NO: CV-S-98-00305-LDG (RJJ) <br><br> **ORDER TO VACATE CONSENT DECREE** <br><br> Courtroom: Honorable Lloyd D. George |

**ORDER TO VACATE CONSENT DECREE**

Having considered the papers regarding Southern California Edison Company, Salt River Project Agricultural Improvement and Power District, Nevada Power Company and Los Angeles Department of Water and Power's (collectively, "Defendants") Unopposed Motion to Vacate Consent Decree, the Court makes the following Findings of Fact, Conclusions of Law and Order.

<u>FINDINGS OF FACT</u>

1. On February 19, 1998, Plaintiffs Grand Canyon Trust, Inc. and the Sierra Club, Inc. filed a citizen suit pursuant to Section 304 of the Clean Air Act, 42 U.S.C. § 7604, alleging violations of the Nevada State Implementation Plan and emission permits in connection with Defendants' Mohave power plant located in Clark County, Nevada ("Mohave Station"). A First Amended Complaint was filed on February 4, 1999, which added National Parks and Conservation Association as a party plaintiff (collectively with the Sierra Club, Inc. and the Grand Canyon Trust, Inc., "Plaintiffs").

2. On December 15, 1999, Plaintiffs and Defendants entered into a Consent Decree which sought to bring air pollution emissions from the Mohave Station's coal-fired generating units within specified emission limitations by the first quarter of 2006.

3. During the period of time between the entry of the Consent Decree and the date on which each coal-fired generating unit was to commence compliance with the final emission limitations (the "Interim Period"), Defendants' SO2 emissions for each unit did not exceed 1.0 pounds per million BTU of heat input calculated on a 90-day boiler operating day rolling average, as set forth in paragraph 18(a) of the Consent Decree.

4. During the Interim Period, Defendants deposited $5,000 into an escrow account for every opacity reading in excess of 30 percent ("Excess Opacity Readings") that exceeded 375 per calendar quarter, pursuant to paragraph 34(e) of the Consent Decree.

5. During the Interim Period, a total of 7,922 Excess Opacity Readings were recorded during 24.185 quarters, which equates to an Average Quarterly Opacity Exceedance of 327.558. As per paragraph 18(b) of the Consent Decree, an Average Quarterly Opacity

1  Exceedance of less than 375 demonstrates compliance with the interim limit.

2      6. Defendants timely submitted all required biannual reports during the Interim

3  Period, as required by paragraph 20 of the Consent Decree.

4      7. On December 31, 2005, before the final emission limitations set forth in the

5  Consent Decree went into effect, the Mohave Station ceased all coal-fired operations, pursuant to

6  paragraphs 4 and 14 of the Consent Decree. Thereafter, Defendants decided to make the plant

7  shutdown permanent, and SCE cancelled its operating permits and began removal of all of the

8  Mohave Station's generating equipment.

9      8. Defendants timely submitted all quarterly reports pursuant to paragraph 21 of

10 the Consent Decree.

11     CONCLUSIONS OF LAW

12     1. Defendants fully complied with the Consent Decree's BTU threshold for SO2

13 emissions during the Interim Period.

14     2. Defendants fully complied with the Consent Decree's opacity limits during the

15 Interim Period.

16     3. Defendants fully complied with the Interim Period biannual reporting

17 requirements.

18     4. The closure of the Mohave Station constitutes full compliance with the

19 Consent Decree because by ceasing plant operations, Defendants have complied with all of the

20 Consent Decree's final emission limitations and achieved the Consent Decree's purpose.

21 Removal of the Mohave Station guarantees compliance with the Consent Decree's emission

22 limitations in perpetuity.

23     5. Defendants fully complied with the quarterly reporting requirements.

24     6. The Average Quarterly Opacity Exceedance for the entire Interim Period was

25 less than 375, and thus all penalties and interest that have accrued in the escrow should be

26 returned to Defendants pursuant to paragraph 34(f) of the Consent Decree.

27

28

IT IS HEREBY ORDERED

1. The Consent Decree entered into by Plaintiffs and Defendants is hereby terminated as the Decree's purpose has been achieved, and

2. Stipulated penalties and interest that have accrued in the escrow account must be returned to Defendants as Defendants complied with the interim opacity limits set forth in the Consent Decree.

This 25 day of May, 2011.

_____
Honorable Lloyd D. George
United States District Judge